UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEPHEN L. LIPP,

         Plaintiff,

   -vs-


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY

        Defendant.


_____

**DECISION AND ORDER**
**No. 10-CV-0398(MAT)**

## INTRODUCTION

Represented by counsel, Stephen L. Lipp ("Plaintiff" or "Lipp"), brings this action pursuant to Title II of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits ("DIB"). The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with the applicable legal standards. Accordingly, this Court hereby grants the Commissioner's motion for judgment on the pleadings.

## PROCEDURAL HISTORY

On January 10, 2006, Plaintiff filed an application for DIB, claiming disability since November 3, 2005, for neck and back problems, and a shoulder injury. Administrative Transcript ("Tr.") 57, 72-74, 117-118. Plaintiff's claim was denied on March 29, 2006. Tr. 21, 54-57. At Plaintiff's request, an administrative hearing was conducted on April 11, 2008 in Buffalo, New York before Administrative Law Judge ("ALJ") Lamar W. Davis. Lipp, who was represented by attorney Lawrence S. Lewis, testified at the hearing, as did impartial vocational expert Timothy P. Janikowski, Ph.D. ("Janikowski" or "VE"). Tr. 218-246.

On June 3, 2008, the ALJ issued a decision finding that Lipp was not disabled during the relevant period. Tr. 10-20, 252-262. Lipp requested review of the ALJ's decision, and the Appeals Council denied Plaintiff's request. Tr. 2-4, 263-265.

Plaintiff then filed a civil action in this Court (09-cv-00319). By Stipulation and Order entered September 28, 2009, the Court (Hon. H. Kenneth Schroeder, Jr.) remanded the case to the Commissioner for further proceedings.

By letter dated December 21, 2009, the Appeals Council sent copies of the exhibits and a duplicate recording of the proceedings to Plaintiff's new attorney. The letter also offered Plaintiff the opportunity to submit additional evidence or a statement about the facts and law in the case. Tr. 250-251. On March 1, 2010, the

Appeals Council sent a memorandum to Plaintiff's counsel indicating that to date, no additional information had been received, and requested that Plaintiff submit any additional evidence or information by March 15, 2010. See Def's Mem at Ex. A. The ALJ's decision dated June 3, 2008 became the Commissioner's final decision on April 13, 2010, when the Appeals Council denied Plaintiff's request for review once more. Tr. 247-249. This action followed.

**FACTUAL BACKGROUND**

Plaintiff has adopted the summary of the relevant medical evidence set forth in Defendant's Memorandum of Law (Dkt. No. 7). Briefly, Plaintiff was involved in a work-related accident on August 29, 2005. Tr. 176. He immediately underwent a cervical spine x-ray that showed degenerative changes. Tr. 174, 217.

In September 2005, Plaintiff was examined by Alfredo Rodes, M.D. who opined that Plaintiff suffered from neck sprain and strain. Tr. 211. Later that same month, Dr. Rodes examined Plaintiff, at which time Plaintiff reported that his condition had been "mostly well controlled" with medication. Dr. Rodes certified that Plaintiff could return to "regular duty" work on September 26, 2005. Tr. 210.

In November 2005, Usha Raghavan, M.D. conducted an independent medical examination of Plaintiff for his employer's insurance carrier. Tr. 201-03, 206-08, 213-16. Dr. Raghavan's examination

revealed that Plaintiff had reduced range of motion in his neck, and tenderness to palpation in his lower cervical vertebrae. Tr. 201, 206, 214. Dr. Raghavan concluded that Plaintiff had cervical strain "which is causally related to" his August 29, 2005 work accident. Tr. 203, 208, 216.

In December 2005, Petitioner began seeing Dr. P. Jeffrey Lewis, who examined Petitioner and assessed that he showed restricted range of motion in all areas of the cervical, thoracic, and lumbar spine, and had some restricted range of motion in the right shoulder in flexion. Tr. 177. Dr. Lewis noted that Plaintiff began taking physiotherapy on November 25, 2005, and was also taking Naprosyn and Oxycodone for his pain. Tr. 176, 204. In January 2006, Dr. Lewis assessed that Plaintiff had a moderate to marked level of disability and released him to return to "light duty" work. Tr. 200. Treatment notes from February 8, 2006 from Dr. Lewis show that Plaintiff had been symptomatic since his work injury, and that Dr. Lewis had placed Plaintiff on "total disability from work." Dr. Lewis recommended an anterior cervical microdiscectomy and fusion with respect to Plaintiff's spine. Tr. 158. On February 28, 2008, Dr. Lewis assessed that Plaintiff was "totally disabled" until further notice. Tr. 130. The following day, Dr. Lewis and Edward Vargi, RPA, co-signed a report in which they noted Plaintiff "does not feel he can work," and they continued Plaintiff on "total disability." Tr. 129, 134.

In January 2006, Plaintiff underwent MRIs of his cervical spine and right shoulder. The MRI of his cervical spine revealed moderate disc herniation in two locations, and the MRI of his right shoulder revealed acromioclavicular joint atropathy along with a small tendon tear. Tr. 154, 155. Also at this time, x-rays were taken of Plaintiff's cervical spine and right shoulder. The x-rays of Plaintiff's cervical spine revealed cervical spondylosis in two locations, and the x-ray of his right shoulder revealed some changes of the acromioclaviculare joint. Tr. 184.

Plaintiff began seeing registered physician assistant ("PA") Jason D. Fabianksi and Michael T. Grant, M.D. in January 2006. Tr. 182-183, 198-199. Upon initial examination, Plaintiff's cervical spine showed "decrease in tender range" and his right shoulder revealed reduced range of motion, but no deformity. Tr. 182, 198. At a subsequent examination, Plaintiff's right shoulder was "tender and weak to resisted abduction" and impingement sign was positive. PA Fabianksi and Dr. Grant recommended arthroscopy. Tr. 180. PA Fabianski and Dr. Grant co-signed a report, dated November 21, 2007, in which they noted that Plaintiff was status post a second shoulder arthroscopy. Tr. 135-136. After a physical examination, they concluded that Plaintiff was "persistently symptomatic following a work related injury to his cervical spine and right shoulder." Tr. 135. On January 24, 2008, they re-evaluated Plaintiff again, at which time Plaintiff

complained of persistent pain and discomfort in his right shoulder and arm. Tr. 137. Upon physical examination, PA Fabianksi and Dr. Grant concluded again that Plaintiff was "persistently symptomatic." Tr. 137. On March 25, 2008, PA Fabianksi and Dr. Grant co-signed a report in which they asserted that Plaintiff remains "totally disabled." Tr. 127-128.

In January 2006, Plaintiff was examined by Paul F. Updike, M.D. for workers' compensation purposes. Tr. 194-195. Plaintiff reported that his pain was "very well-controlled" and manageable with his medication regime. Tr. 194. Plaintiff's physical examination overall and a review of his systems was "fairly unremarkable." Tr. 191-192, 194. Dr. Updike noted that, upon examination, he "really did not see much evidence of significant radicular component to his pain or really significant shoulder pathology." Tr. 194. Dr. Updike also noted that Plaintiff's history and presentation were "unusual," and that Plaintiff refused any change in his care. Dr. Updike recommended close monitoring and urine toxicology to rule out illicit drug use. Tr. 194-195.

In February 2006, Plaintiff underwent another MRI of his lumbar spine, which showed moderate spondylolisthesis, advanced disc degeneration with mild herniation, severe bilateral neural foramen stenosis, and minimal bulging of the annulus fibrosus. Tr. 156.

In January 2008, Plaintiff began receiving behavioral pain coping skills training from Jeffrey Lackner, Psy.D.  Tr. 133.  In a report dated March 5, 2008, Dr. Lackner stated that six sessions were scheduled with Plaintiff, but that Plaintiff cancelled three of them.  Due to Plaintiff's poor compliance with Dr. Lackner's "behavioral homework," Dr. Lackner discharged Plaintiff from his care.  Tr. 133.

Edward P. O'Brien III, M.D. provided an undated report, in which he indicated that he began treating Plaintiff in September 2005 for cervical neck pain.  Tr. 160.  Dr. O'Brien noted that Plaintiff was taking pain medication.  Tr. 161.  He conducted a physical examination of Plaintiff, noting Plaintiff's complaints of cervical neck and right shoulder pain.  Tr. 164.  Dr. O'Brien assessed that Plaintiff could lift and carry zero pounds, could stan
d/walk less than two hours in an eight hour work day, and could sit without limitation.  He also noted that Plaintiff was limited in his ability to push and pull.  Dr. O'Brien concluded that Plaintiff was "disabled as per Dr[s]. Lewis/Grant."  Tr. 164.

The medical evidence of record, along with Plaintiff's testimony, is discussed below in further detail, as necessary.

**DISCUSSION**

**I.    Scope of Review**

Title 42 U.S.C., Section 405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. See Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

## II. The Commissioner's Decision to Deny the Plaintiff Benefits was Supported by Substantial Evidence in the Record

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims.[1] Tr. 10-20. Under step 1 of the process, the ALJ found that Plaintiff did not engage in substantial gainful activity during the relevant period. Id. at 15. At steps 2 and 3, the ALJ concluded that, through the date last insured, Plaintiff had the severe combination of impairments of right shoulder and cervical spine dysfunction, but that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. Id. at 15-16. At steps 4 and 5, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work[2] with certain restrictions.[3] Id. at 17. Moreover, the ALJ found

---

[1]

    The five-step analysis requires the ALJ to consider the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activities; (3) if the claimant suffers a severe impairment, the ALJ considers whether the claimant has an impairment which is listed in Appendix 1, Subpart P, Regulation No. 4, if so, the claimant is presumed disabled; (4) if not, the ALJ considers whether the impairment prevents the claimant from doing past relevant work; (5) if the claimant's impairments prevent his or her from doing past relevant work, if other work exists in significant numbers in the national economy that accommodate the claimant's residual functional capacity and vocational factors, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).

[2]

    Light work requires the capacity to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, standing or walking, off an on, for six hours out of an eight-hour workday. 20 C.F.R. § 404.1567(b); see also Social Security Ruling (SSR) 83-10.

[3]

    These restrictions are as follows: "[Plaintiff] cannot reach overhead, perform unsupported forward extension or perform rapid, repetitive motion with the dominant right upper extremity; he can incidentally (up to a sixth of the workday) perform postural activities; he should avoid unprotected heights and

that, through the date last insured, Plaintiff was unable to perform any past relevant work, but that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Id. at 18-19.

Plaintiff argues that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff maintains that: the ALJ erred as a matter of law by not re-contacting the Plaintiff's treating doctors, Drs. Lewis, Grant, and O'Brien (Point I); the ALJ failed to properly assess the opinion of the Plaintiff's treating doctors (Point II); the ALJ erred by substituting his opinion for medical expert opinion (Point III); and that the ALJ did not properly assess the Plaintiff's subjective complaints (Point IV). See Plaintiff's Memorandum of Law ("Pl's Mem."), Points I-IV (Dkt. No. 8). The Court rejects Plaintiff's arguments for the reasons discussed below, and affirms the ALJ's decision denying Plaintiff DIB.

**(A) The ALJ Did Not Err by Not Re-Contacting Plaintiff's Treating Sources**

Plaintiff alleges that the ALJ erred by not re-contacting Plaintiff's treating sources, Drs. Lewis, Grant and O'Brien. Specifically, he argues that "the ALJ was under a duty to complete

---

dangerous machinery; and he should avoid working at a piece work production pace. He should be allowed to alternate between sitting and standing as needed. He can understand, remember and carry out simple, routine repetitive tasks involving incidental use of independent judgment or discretion and no more than incidental changes in work processes." Tr. 17.

the record by recontacting Drs. Lewis, Grant, and O'Brien for a
more specific medical interpretation of why the Plaintiff was
'totally disabled.'"  <u>See</u> Pl's Mem. at 4-8.  The Court rejects
Plaintiff's argument.

Re-contacting medical providers is necessary when the ALJ
cannot make a disability determination based on the evidence of
record.  20 C.F.R. § 404.1512(e).  But the ALJ is not prevented
from making a disability determination even if "the evidence . . .,
including any medical opinion(s), is inconsistent with other
evidence or is internally inconsistent, [so long as the ALJ weighs]
all of the evidence and see[s] whether [he] can decide whether
[plaintiff is] disabled based on the evidence."  20 C.F.R.
§ 404.1527(c)(2).  Further, Social Security Ruling 96-5p, 1996 SSR
LEXIS 2 instructs adjudicators that opinions from any medical
source about issues reserved to the Commissioner, such as those
regarding whether Plaintiff meets the statutory definition of
disability, must never be ignored.

Here, there is no indication that the ALJ had insufficient
evidence or could not reach a conclusion based on the record before
him.  The record contained various reports, notes, and examinations
by Drs. Lewis, Grant and O'Brien.  Further, the ALJ did not ignore
"the opinions of total disability" altogether, but rather, found
that they were not entitled to great weight "because they [were]
either limited to the claimant's past work as a roofer or are based

on the claimant's subjective complaints." Tr. 18. Moreover, the Court notes that Dr. O'Brien's statement that Plaintiff was "disabled" was not based on his own assessment of Plaintiff, but, as the ALJ pointed out in his decision, was based on the determination made by Drs. Lewis and Grant. Tr. 16. As discussed below, the ALJ properly assessed the opinions of Plaintiff's treating physicians, and determined that Plaintiff maintained the RFC to perform "light work" with certain restrictions. Tr. 17. Accordingly, there was no basis for the ALJ to seek additional information from Drs. Lewis, Dr. Grant, and Dr. O'Brien concerning their opinions that Plaintiff was disabled. Plaintiff's claim is therefore rejected.

**(B)    The ALJ Properly Assessed the Opinion of Plaintiff's Treating Doctors Pursuant to SSR 96-2p**

Plaintiff argues that "the ALJ failed to comply with the controlling law in this circuit, as well as the Commissioner's own regulations, in failing to provide any reasons, much less good cause, for his obvious rejection of the opinions and assessments of the Plaintiff's [treating] doctors." See Pl's Mem. at 8. The Court is unpersuaded by this argument.

Under the Regulations, a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); see also Schisler v.

_Sullivan_, 3 F.3d 563, 567 (2d Cir. 1993); _see also_ _Veino v._
_Barnhart_, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's
opinion is not controlling when contradicted "by other substantial
evidence in the record"); 20 C.F.R. § 404.1527(d)(2). The less
consistent an opinion is with the record as a whole, the less
weight it is to be given. _Stevens v. Barnhart_, 473 F.Supp.2d 357,
362 (N.D.N.Y. 2007); _see also_ _Otts v. Comm'r of Social Sec._, 249
Fed.Appx. 887, 889 (2d Cir. 2007) (an ALJ may reject such an
opinion of a treating physician "upon the identification of good
reasons, such as substantial contradictory evidence in the
record"). An ALJ may refuse to consider the treating physician's
opinion controlling if he is able to set forth good reason for
doing so. _Barnett v. Apfel_, 13 F. Supp.2d 312, 316 (N.D.N.Y.
1998). When an ALJ refuses to assign a treating physician's
opinion controlling weight, he must consider a number of factors to
determine the appropriate weight to assign, including: (i) the
frequency of the examination and the length, nature and extent of
the treatment relationship; (ii) the evidence in support of the
treating physician's opinion; (iii) the consistency of the opinion
with the record as a whole; (iv) whether the opinion is from a
specialist; and (v) other factors brought to the Social Security
Administration's attention that tend to support or contradict the
opinion. 20 C.F.R. § 404.1527(d)(2).

The opinion of the treating physician is not afforded controlling weight where the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); see also Filoramo v. Apfel, 1999 U.S. Dist. LEXIS 16534, 1999 WL 1011942, at *7 (E.D.N.Y. 1999) (holding that the ALJ properly discounted the assessment of a treating physician as it was inconsistent with opinions of other treating and consulting physicians). Such a conclusion provides a proper basis under SSR 96-2p, 1996 SSR LEXIS 9 for rejecting a treating physician's conclusion. Taylor v. Astrue, 2008 U.S. Dist. LEXIS 46619, 2008 WL 3884356, at *11 (N.D.N.Y. 2008). Further, an opinion that is not based on clinical findings will not be accorded as much weight as an opinion that is well-supported. 20 C.F.R. §§ 404.1527(d)(3), 416.927 (d)(3).

Here, the ALJ properly afforded less than controlling weight to the opinions of treating physicians Lewis, Grant and O'Brien because their opinions of total disability were not well-supported by relevant evidence.

With respect to Dr. Lewis, for example, he examined Plaintiff in December 2005 and found that he had restricted range of motion in all areas of his spine. Yet, Dr. Lewis also opined, at that same time, that Plaintiff "really did not participate in the exam that well." Tr. 177. Also in December 2005, Dr. Lewis assessed

that Plaintiff's sensory exams were unremarkable and his deep tendon reflexes were normal bilaterally.  He noted no myelopathic findings, and shortly thereafter released him to return to "light duty" work.  Tr. 177.

Similarly, upon physically examining Plaintiff, Dr. Grant repeatedly noted that Plaintiff was "weak" and exhibited "tenderness to resisted motion," but also consistently failed to describe the clinical degree of Plaintiff's weakness.  Tr. 127-128, 137, 179, 183.  Further, Dr. Grant's physical exams consistently confirmed that Plaintiff's range of motion improved passively.  Tr. 127-128, 135, 137.

Likewise, the clinical findings of Dr. O'Brien's examination do not support his assessment of Plaintiff's functional limitations, as set forth above.  Tr. 160-167.  For example, Dr. O'Brien reported relatively benign findings with respect to Plaintiff's spine and shoulder impairments:  Plaintiff's motor examination showed normal strength, bulk and tone; his grip strength, rapid alternating movements, and fine manipulation were all normal; his sensory exam was normal in all areas tested, his deep tendon reflexes were normal; and, his range of motion was near full in both shoulders and in his lumbar spine.  Tr. 160-163, 165-166.  Moreover, as discussed above, Dr. O'Brien concluded that Plaintiff was "disabled as per Dr. Lewis/Grant," and not based on his own assessment of Plaintiff.  Tr. 164.  However, as set forth

above, the opinions of Dr. Lewis and Dr. Grant did not support their own objective findings.

Further, the opinions of Drs. Lewis, Grant and O'Brien are inconsistent with the other substantial evidence in the record that supports the ALJ's determination that Plaintiff could perform a range of light work.  See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he less consistent [an] opinion is with the record as a whole, the less weight it will be given.").  For example, examinations by Dr. Rodes showed full range of motion in Plaintiff's neck, full muscle strength in his upper and lower extremities, no spasm, normal muscle tone, and normal neurological findings.  Tr. 209, 211.  Dr. Rodes also opined that Plaintiff could return to "regular duty" work at the end of September 2005. Tr. 210.  Similarly, Dr. Ragahavan's November 2005 examination of Plaintiff showed reduced range of motion in Plaintiff's neck with tenderness, but also showed that Plaintiff's muscle strength was full without atrophy, and range of motion in both shoulders was normal.  Tr. 201.  Further, Dr. Updike's January 2006 physical examination of Plaintiff was noted as "fairly unremarkable," as Plaintiff's upper extremity reflexes and motor strength were normal, and his range of motion in both shoulders was normal. Dr. Updike reported that his examination did not reveal "much evidence of significant radicular component to [Plaintiff's] pain or really significant shoulder pathology."  Tr. 194.  Additionally,

Dr. Lackner opined that Plaintiff had poor compliance with behavioral coping skills training, noting that Plaintiff's "motivational profile is at odds with people with genuine pain problems who want help and do what it takes to put their injury behind them." Consequently, Dr. Lackner discontinued his treatment of Plaintiff. Tr. 133.

Accordingly, the Court finds that the ALJ properly assessed the opinion of the Plaintiff's treating doctors, affording them less than controlling weight because they were unsupported by relevant evidence and were inconsistent with the other substantial evidence of record. Accordingly, the Court rejects Plaintiff's argument.

### (C) The ALJ Did Not Substitute his Opinion for Medical Expert Opinion

Plaintiff argues that the ALJ erred in substituting his opinion for medical expert opinion in making his RFC finding. To support his claim, Plaintiff points to diagnostic testing performed on him, and asserts that "these objective medical reports could reasonably cause the Plaintiff's chronic shoulder and neck pain, as [Plaintiff] testified, but the ALJ appears to have interpreted these reports as not being severe enough to support the Plaintiff's subjective complaints." See Pl's Mem. at 11. The Court finds this claim is not supported by the record.

Residual functional capacity is a medical factor as to what a claimant is physically capable of doing, and is determined by the

ALJ based on the medical evidence. 20 C.F.R. § 404.1546. Indeed, the ALJ may not substitute his opinion in place of objective medical evidence. Eiden v. Secretary of Dept. of Health, Education and Welfare, 616 F.2d 63 (2d Cir. 1980).

The record does not support Plaintiff's claim that the ALJ substituted his judgment for that of the medical experts. The ALJ carefully reviewed and weighed the medical evidence of record, and determined that Plaintiff retained the RFC to perform a range of light work. Tr. 15-18. As discussed in detail above, in determining Plaintiff's RFC, the ALJ properly weighed the medical opinions in the record, and declined to afford controlling weight to treating doctors Lewis, Grant, and O'Brien that Plaintiff was disabled because their opinions were unsupported by relevant evidence and because they were inconsistent with other evidence in the record. Specifically, Dr. Rodes assessed that Plaintiff had full range of motion in his neck, full muscle strength in his upper and lower extremities, normal muscle tone and neurological findings, and exhibited no spasm. Tr. 209, 211. Similarly, in November 2005, Dr. Raghavan opined that although Plaintiff had reduced range of motion in his neck, his muscle strength was full and his range of motion in both his shoulders was normal. Tr. 201. Likewise, Dr. Updike reported in January 2006 that Plaintiff's physical examination was "fairly unremarkable," specifically noting that Plaintiff's upper extremity reflexes and his motor strength

were normal, as was his range of motion in both shoulders. Tr. 194-195.

Moreover, the ALJ properly assessed Plaintiff's subjective complaints of pain and functional limitations in determining Plaintiff's RFC (as discussed in detail below), finding that said complaints were inconsistent with the objective evidence in the record and Plaintiff neither required nor received treatment consistent with his alleged level of pain, that he was taking strong pain medication despite "fairly unremarkable" physical examination findings, that he refused change in his care, and that he was not compliant with pain management therapy. Tr. 17. Additionally, as discussed below, the ALJ properly discounted Plaintiff's subjective complaints because they were supported by his own admissions in the record and the inconsistencies reflected in his testimony.

Accordingly, the Court rejects Plaintiff's argument that the ALJ erred in substituting his opinion for medical expert opinion in making his RFC finding.

### (D) The ALJ Properly Assessed Plaintiff's Subjective Complaints

Plaintiff claims that the ALJ failed to properly assess his subjective complaints. Specifically, he argues that his subjective complaints should have been given "great weight." He also claims that the ALJ erred in not complying with Social Security Ruling 96-7p. See Pl's Mem. at 12-13.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints, and found that his "allegations of disability [were] not supported by the record."  Tr. 17.  In determining the claimant's credibility, the SSA explains that a strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.  In doing so, the adjudicator must consider such factors as:  the degree to which the individual's statements are consistent with the medical signs and laboratory findings and other information provided by medical sources, including information of claimant's  medical history and treatment, and the consistency of the claimant's own statements.  The adjudicator must compare statements made by the individual in connection with his claim for disability benefits with statements he made under other circumstances, when such information is in the case record.  See SSR 96-7p, 1996 SSR LEXIS 4.  In rejecting a claimant's credibility with respect to allegations of pain and other symptoms, an ALJ may rely on contradictions in the claimant's own statements, or inconsistencies between the claimant's statements and the record as a whole.  Davis v. Apfel, 149 F. Supp. 2d 99, 107 (D. Del. 2001).

Here, the ALJ discounted Plaintiff's subjective complaints of pain and his alleged functional limitations based upon the objective evidence in the record that showed that, despite Plaintiff's assessment of his "pain at the level of 10/10 on the

standard pain scale," he "neither required nor received a level of treatment consistent with [that] level of pain." Tr. 17. The ALJ also noted Plaintiff's "possible addiction to narcotic pain medications" given that Plaintiff "has been taking strong narcotic pain medications for allegedly extreme pain despite 'fairly unremarkable' physical examination findings." Id. Additionally, the ALJ noted, that Plaintiff "has refused any change in his care" and that he was not compliant with pain management therapy. Id.

The ALJ's credibility finding is further supported by Plaintiff's own admissions in the record and the inconsistencies reflected in his testimony. For example, Plaintiff testified at his hearing that he stopped working because he could no longer lift or bend. Tr. 224. However, treatment notes from Dr. Raghavan reflect that Plaintiff stopped working because he was laid off on November 2, 2005 "as there was no roofing work available." Tr. 201. Similarly, Plaintiff testified at his hearing that he had looked for work subsequent to being laid off and mailed out resumes, but had received no responses. Tr. 236. Yet, treatment notes from Drs. Lewis and Grant reflect that Plaintiff told them that he was physically unable to work. Tr. 129, 137.

The record also reflects that while Plaintiff told Drs. Lewis and Grant that he was physically unable to work, he also related to Dr. Rodes and Dr. Updike that his condition had been "mostly well controlled" or "very well controlled" with medication. Tr. 194,

209.  In fact, treatment notes from Dr. Updike reveal that Plaintiff reported that, with medication, his pain was manageable at a level "2/10" on the pain scale.  Tr. 194.  Although Plaintiff testified at his hearing that he experienced memory loss as a side effect of his pain medication, he related to Dr. Rodes that he had no side effects.  Tr. 209, 235.

Additionally, Plaintiff testified at his hearing that his girlfriend cooked and did the household chores.  Tr. 237-238.  However, this testimony is inconsistent with Plaintiff's responses on his disability function assessment form (Tr. 90-100) in which he indicated that he cooked his own meals daily, cared for his pet, and had no difficulty with personal care.  Tr. 91-92.  Likewise, Plaintiff reported on this same form that he went outside "everyday for physical therapy and computer classes," and that he walked or used public transportation.  Tr. 93.

It is significant that throughout the record Plaintiff often denied musculoskeletal and neurological symptoms.  Tr. 176-177, 209, 211.  Based on these inconsistencies and that the record does not adequately support Plaintiff's subjective complaints, this Court finds that the ALJ correctly found that the Plaintiff's subjective complaints were not credible.  The ALJ's finding regarding the credibility of Plaintiff's testimony must be accepted by the Court where, as here, it is supported by substantial evidence in the record.  Aponte v. Secretary of Health and Human

_Services_, 728 F.2d 588, 591 (2d Cir. 1984).  Accordingly, the Court rejects this argument.

## CONCLUSION

After careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 6).  Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     May 7, 2013
           Rochester, New York